# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SWAYSEY RANKIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 13 C 4671 |
| | ) |
| | ) Hon. John Z. Lee |
| THOMAS DART, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Swaysey Rankin, presently a prisoner at Western Correctional Center, brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants, Cook County Sheriff Thomas Dart and Cook County Jail Superintendent Thomas, were deliberately indifferent to Plaintiff's living conditions while he was detained at Cook County Jail. Defendants have moved for summary judgment. For the reasons stated below, Defendants' motion is granted in part and denied in part.

### I. Background

**A. Local Rule 56.1**

Consistent with the local rules, Defendants filed a Local Rule 56.1(a)(3) statement of undisputed facts along with their summary judgment motion and served Plaintiff with a Local Rule 56.2 Notice, which explains in detail the requirements of Local Rule 56.1.

Local Rule 56.1(b)(3) requires that the opposing party's response to the movant's statement of undisputed facts must respond to each numbered paragraph and include specific references to supporting materials for those statements that are disputed. L.R. 56.1(b)(3)(B). In addition, the opposing party must submit their own statement of any additional facts that require

denial of summary judgment, including references to supporting materials to support the additional statement of additional facts. L.R. 56.1(b)(3)(C).

Plaintiff properly responded to Defendants' proposed undisputed facts, but he failed to submit his own statement of additional facts that require denial of summary judgment. Plaintiff, however, has submitted affidavits from other inmates that were housed on Tier 2E of Division 9 during at least part of the same timeframe as Plaintiff. Plaintiff styled the additional affidavits as a "motion for dismissal of (Defendants') motion for summary judgment." Defendants oppose the "motion," arguing that it should be "denied" because the additional discovery would not establish a genuine issue of material fact, because any additional discovery is untimely and due to Plaintiff's own inaction, and the affidavits contain hearsay. In light of Plaintiff's pro se status and his incarceration, Defendants' objections to the affidavits are overruled and the Court will consider the affidavits to the extent they contain admissible evidence.

**B. Undisputed Facts**

The pertinent facts are as follows. Plaintiff was incarcerated at the Cook County Jail (Jail) during the relevant time period. Defs.' SOF ¶ 1. Defendant Thomas Dart was the Sheriff of Cook County during that time and Defendant Thomas was Superintendent of Division 9 at the Jail during a portion of that time. *Id.* ¶ 2.

In September of 2011, Plaintiff was assigned to Cell 2334 on Tier 2F of Division 9, where he remained until December 15, 2011. *Id.* ¶ 4. Superintendent Thomas was not the superintendent of Division 9 while Plaintiff was housed on Tier 2F. *Id.* ¶ 5. Plaintiff's cell on Tier 2F had a working sink with running warm and cold water and a working toilet. *Id.* ¶ 7. Plaintiff's cell had concrete walls and a window to the outside. *Id.*, ¶ 8. Plaintiff had access to the commissary at the Jail, where he could buy "thermals." *Id.* ¶ 9. Plaintiff had two sheets, a

blanket, a thermal, and his uniform in his cell. *Id.* ¶ 11. Plaintiff was allowed out of his cell for 1.5 hours in the morning and 1.5 hours in the evening, unless the Tier was on lockdown. *Id.* ¶ 10; Pl.'s Resp. ¶ 10.

While assigned to Cell 2334, Plaintiff was very cold at night. Defs.' SOF ¶ 12. For approximately a week of his detention in Cell 2334, Plaintiff observed ice on a wall and on the window of his cell and he could see his breath at night for approximately half a week. *Id.* ¶ 13. There was also cold air blowing from the vent in his cell. *Id.* ¶ 14. During this time, Plaintiff would cover himself with a sheet and blanket while wearing his uniform and thermals but he was still cold. *Id.* ¶ 15. Sometimes he was warmer if he covered the vent. *Id*. Plaintiff told staff he was cold and asked for another blanket, but was told none were available. *Id.* ¶ 16. Plaintiff did not a have a thermometer and did not know the precise temperature in his cell on the cold days. *Id.* ¶ 17.

On December 15, 2011, Plaintiff was moved to Cell 2209 on Tier 2E in Division 9, where he remained until he was transferred to the Illinois Department of Corrections in January 2013. *Id.* ¶ 20. That same day, a measurement of the temperature in Plaintiff's previous cell, Cell 2334, read 76.8 degrees Fahrenheit. *Id.* ¶ 18. Cell 2209 was made of concrete and cinderblock walls, with a closed window to the outside, a working toilet, and a sink with hot and cold running water. *Id.* ¶ 21.

It was also cold inside Cell 2209. *Id.* ¶ 23. Plaintiff informed a female correctional officer about the cold the next day, but he did not ask for a blanket. *Id.* ¶¶ 23–24. During the days and nights, Plaintiff covered himself with a sheet, a blanket and put on his thermals to keep himself warm. *Id.* ¶¶ 25, 34. Plaintiff could see his breath a couple of times while housed in Cell

3

2209. *Id.* ¶ 30. In mid-January 2012, Plaintiff was given a thermal sweater from another detainee that helped against the cold. *Id.* ¶ 28.

On December 20, 2011, Plaintiff submitted a grievance regarding his cold cell. *Id.* ¶ 35. Plaintiff received a response to his grievance on January 22, 2012, indicating that a work order had been submitted to facilities management on January 3, 2012. *Id.* ¶¶ 36–37. Plaintiff submitted another grievance regarding the temperature in his cell on January 26, 2012. *Id.* ¶ 41. The response to Plaintiff's grievance was received on February 8, 2012, indicated that a work order had been completed. *Id.* ¶ 42. Plaintiff's cell was "bearable" all of March 2012. *Id.* ¶ 47.

Plaintiff testified that Superintendent Thomas would come around Tier 2E about once a week during rounds. Defs.' SOF ¶ 48. Plaintiff told Superintendent Thomas about the cold air in his cell at least three times a month from November 2012 through January 2013. *Id.* ¶ 49. Superintendent Thomas told Plaintiff that "they," which Plaintiff believed was the plumbing department, were working on the issue. *Id.* ¶ 50. Superintendent Thomas was never in Plaintiff's cell, and Plaintiff has no personal knowledge of any actions Superintendent Thomas took to address Plaintiff's complaints. *Id.* ¶ 52.

Engineers from the Jail's Department of Facilities Management engineers conduct daily rounds to monitor temperature levels at the Jail. *Id.* ¶ 60. The three daily temperature readings are taken of the tiers: one from cells at the bottom of the tier; another from cells at the top of the tier; and another near the roof of the building where air is discharged. *Id.* ¶ 61. The temperature logs for the relevant time periods show that the temperatures throughout Division 9 ranged between 66 to 80 degrees Fahrenheit. *Id.* ¶ 65.

Other inmates complained about the cold conditions as well. Burnell Smith was housed on Tier 2E of Division 9 from December 2012 through July 2013. *See* Smith Affidavit. Smith states that it was very cold on the tier from December through March and that he complained about the cold to Superintendent Thomas. *Id.* Giovani Carr was housed on Tier 2E of Division from December 2011 through April 2012. *See* Carr Affidavit. He also attests that the tier was very cold. *Id*. Steven Washington was housed on Tier 2E of Division 9 from December 2012 through April 2013. *See* Washington Affidavit. During that time, the Tier was cold due to the cold air that was constantly blowing from the vents. *Id*. Finally, Levie Bryant was housed in cell 2210 on Tier 3E of Division 9 during the winter months of 2012 and 2013. *See* Bryant Affidavit. Bryant attests that, during that time, his cell and the tier generally were very cold due to cold air blowing from the vents and a lack of proper heating. *Id*.

**II. Legal Standards**

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Shell v. Smith*, 789 F.3d 715, 717 (7th Cir. 2015). A motion under Rule 56 must be denied when the nonmoving party has identified an "issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). When deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party. *Shell*, 789 F.3d at 717.

Turning to the claims at issue, prison conditions can be uncomfortable and harsh without violating the Constitution. *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997). However, "[t]he Eighth Amendment prohibits punishments that involve the unnecessary and wanton infliction of pain, are greatly disproportionate to the severity of the crime for which an inmate is imprisoned,

or are totally without penological justification." *Caldwell v. Miller*, 790 F.2d 589, 600 (7th Cir. 1986); *see also Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). "[T]his protection means that the government may not, through deliberate indifference to a known risk of serious injury, deny [Plaintiff] 'adequate food, clothing, shelter, and medical care.'" *White v. Monahan*, 326 Fed. Appx. 387 (7th Cir. 2009) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A lack of heat can constitute such a constitutional violation. *See Gillis v. Litscher*, 468 F.3d 488, 494 (7th Cir. 2006). Conditions of confinement that combine to deprive an inmate of warmth may violate the Eighth Amendment. *See Wilson v.* Seiter, 501 U.S. 294, 305 (1991). And "detainees [such as Rankin] are entitled to no less protection than prisoners whose treatment must meet the standards of the Eighth Amendment." *King v.* Kramer, 680 F.3d 1013, 1017 (7th Cir. 2012).

The analysis for determining whether a constitutional violation occurred is two-fold. First, the Court "must determine whether the conditions at issue were sufficiently serious so that a prison official's acts or omission results in the denial of the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (quotations omitted). Second, if the inmate successfully establishes that the conditions were sufficiently serious, the Court then examines "whether prisoner officials acted with deliberate indifference to the condition in question." *Id.* "Deliberate indifference … means that the official knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take necessary measures to address it." *Id*. (quotation omitted).

Various factors come into play to determine whether cold temperatures amounted to a constitutional violation, including: the severity of the cold, the duration of the cold, whether the inmate has other means to protect himself from the cold, and whether the inmate had to endure

6

other uncomfortable or harsh conditions. *See Dixon*, 114 F.3d at 644; *see also White v. Mohahan*, No. 07 C 0437, 2013 WL 587511, at * 9 (N.D. Ill. Feb. 14, 2013).

The Court also must be mindful that liability under § 1983 is premised on the alleged wrongdoer's personal responsibility; an individual cannot be held liable in a § 1983 action unless he or she caused or participated in an alleged constitutional deprivation. *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012) (citations omitted). The doctrine of *respondeat superior* does not apply to actions filed under § 1983. *See, e.g., Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir. 2008). Liability may only attach to a supervisor or individual of authority if the alleged constitutional violation occurred at the supervisor's direction or with his knowledge or consent. *Childress v. Walker*, 787 F.3d 433, 440 (7th Cir. 2015).

Furthermore, a suit against a Cook County officer in his or her official capacity is really a suit against Cook County itself. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008). And a municipal body is responsible under § 1983 only when the alleged injury is caused by an unconstitutional governmental policy or custom. *See Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978); *Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 674-675 (7th Cir. 2009).

### III. Analysis

Plaintiff alleges that he was housed under unconstitutional conditions in two different cells over two different time periods. Each will be addressed in turn.

**A. Claim as to Cell 2334 on Tier 2F of Division 9**

Plaintiff first was housed in Cell 2334 on Tier 2F of Division 9. But there is no evidence that either of the Defendants had any personal knowledge of the cold conditions in that cell. Thomas was not the superintendent of Division 9 while Plaintiff was housed in 2F, and nothing

indicates he had any knowledge about the conditions in Tier 2F. And, similarly, Plaintiff cannot point to any evidence that Sheriff Dart had any knowledge about the conditions there either.

Plaintiff attempts to hold Sheriff Dart liable, arguing that he can be found liable for "systemic" conditions within the jail. The Court recognizes that the Seventh Circuit has held that dismissal of a *pro se* complaint is inappropriate where the official's position justifies an inference that he or she had some direct involvement in the alleged violation. For example, in *Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir. 1996), the court reversed a dismissal of an unconstitutional conditions claim where the complaint alleged "potentially systemic" problems that could lead to an inference of personal knowledge on the part of an official. But that case was at the pleading stage. Here, at the summary judgment stage, allegations are not enough; Plaintiff must point some evidence from which the Court can infer that Defendants were aware of the conditions alleged.

Not only has Plaintiff failed to present any evidence of this, but the evidence that is in the record demonstrates the contrary. Engineers from the Department of Facilities Management engineers monitored the temperature levels at the jail on a daily basis, and the temperature logs for the relevant time periods showed that the temperatures for Tier 2F was between 66 to 80 degrees Fahrenheit. In addition, the temperature in Plaintiff's cell, 2334, on the day he was moved to a different cell, was 76.8 degrees Fahrenheit. There is simply no evidence from which the Court can infer that Sheriff Dart and Thomas were aware of the cold conditions in this cell.

In addition, Plaintiff provides no evidence that the cold conditions in Cell 2334 were a result of a governmental custom or policy. As such, to the extent that Plaintiff seeks to sue Defendants in their official capacities, those claims also must be dismissed.

For these reasons, Defendants' motion for summary judgment as to Cell 2334 is granted.

8

**B. Claim as to Cell 2209 on Tier 2E of Division 9**

On December 15, 2011, Plaintiff was moved to Cell 2209 on Tier 2E in Division 9, where he remained until he was transferred to the Illinois Department of Corrections in January 2013. Plaintiff was in Cell 2209 for two winters. During this time, Plaintiff was able to see his breath "a couple of times." Moreover, the affidavits provided by Plaintiff demonstrate that Tier 2E and many of its cells were abnormally cold on numerous occasions. While Plaintiff had other means to protect himself from the cold—including his clothing, thermals, a sheet and at least one blanket—the degree and longevity of the cold raise a genuine issue of material fact as to whether the conditions in Cell 2209 rose to a constitutional violation.

Furthermore, there is genuine issue of material fact as to whether Superintendent Thomas was aware of the conditions at Tier 2E. And, there is evidence that the cold condition was an ongoing condition that may have risen to a systemic level. Accordingly, Defendants' motion for summary judgment as to Cell 2209 is denied.

**C. Qualified Immunity**

In the alternative, Defendants argue that they are entitled to qualified immunity. Qualified immunity shields officials from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted). In determining whether an official is entitled to qualified immunity, the Court must ask two questions: "(1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Burton v. Downey*, 805 F.3d 776, 784 (7th Cir. 2015) (quoting *Williams v. City of Chicago*, 733 F.3d 749, 758 (7th Cir. 2013)). As to the second prong, a clearly established right

"must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (internal quotation marks, alteration, and citation omitted). Courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 131 S. Ct. 2074, 2083 (2011) (citations omitted).

As explained above, genuine issues of material fact exist as to whether the conditions in Cell 2209 violated the Constitution. Defendants argue that even if there was a violation of Plaintiff's constitutional rights, there was no clear constitutional violation where the only indication is that temperatures were at acceptable levels and there were no ill effects on Plaintiff. But Plaintiff has presented evidence that the abnormally cold conditions in Tier 2E were known to staff. Under these facts, which must be construed in Plaintiff's favor, a reasonable custodial official would have understood that doing nothing to remediate the issue would violate Plaintiff's constitutional rights. *See Reichle*, 132 S. Ct. at 2093; *Gillis*, 468 F.3d at 494 (lack of heat can constitute such a constitutional violation). Accordingly, Defendants are not entitled to qualified immunity.

### IV. Conclusion

For the reasons stated, Defendants' motion for summary judgment [38] is granted in part and denied in part. Plaintiff may proceed on his claim of an unconstitutional condition of confinement while housed in Cell 2209 on Tier 2E in Division 9 against Superintendent Thomas and Sheriff Thomas Dart. Plaintiff's "motion for dismissal of (Defendants') motion for summary judgment" [57] is construed as Plaintiff's additional response and is granted to that extent. Plaintiff's motion for appointment of counsel [54] is granted. An earlier motion for appointment

of counsel [46] is stricken as moot. The parties should be prepared to set a trial date at the next status hearing.


**SO ORDERED**             **ENTER:**   **3/16/16**

_____
**JOHN Z. LEE**
**United States District Judge**